[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT DATED FEBRUARY 3, 1992 (NO. 140.09)
The parties came to this court and presented evidence. The wife testified, the husband testified and the husband's current wife testified.
The husband is presently the president of JL Mortgage Associates (JL stands for Jesus is Lord). He testified that he has been in the mortgage business for twenty or twenty-one years. He remarried shortly after the dissolution of marriage. His annual salary he testified is $42,000.00. It was $42,000.00 in 1989 and 1990. For 1991, he earned $24,000.00. During 1991, he spent approximately 47 days in jail as the result of being ordered in jail for contempt of an order of Judge Hauser. During the time he was in jail, his present wife, who is the owner of the corporation, hired someone to replace him at $500.00 per week.
The husband's current affidavit shows that he earns $42,000.00 per year. His net weekly wages are $400.00. He has no assets shown on his affidavit. He has debts totalling $122,957.00.
The present wife testified, her income records were produced, and they show she earned, for 1991, $44,889.00, $6,614.00 of that was medical insurance premium which had to be CT Page 3027 taken as an income item. In addition, her tax returns were introduced and showed that she earned in 1989 $90,600.00 and in 1990 $64,800.00. The present wife's earnings are relevant to show the expenses being paid by her for his benefit.
The plaintiff, the former wife, Jean Lanzo, failed to sustain her burden that the company or any part of its ownership was actually owned by James Lanzo. The testimony was that he is merely an employee and his present wife is the owner of the company.
The plaintiff in this case, the ex wife, is gainfully employed and her financial affidavit shows that she is earning weekly $737.50 so that her gross earnings are in excess of $38,000.00.
In the proceedings before Judge Hauser on June 11, 1991, it is clear that a condition of Mr. Lanzo's release was that he was going to "apply promptly to Harvard University for a loan of $4,600.00, your Honor." This was a representation by his attorney. To date he has not made that application, and this court finds him in wilfull violation of that court order.
It is further clear from the record of the transcript, a copy of which is attached to this memorandum of decision, that on page two it was agreed that the monthly payment was defined as being one half which was $462.50. That means the monthly payment being paid on the first and the 15th would be in total $925.00. The husband attempts in these proceedings to back away from that stipulation arguing the separation agreement provides otherwise. The parties have agreed that if the escalator procedures of the separation agreement are computed that that would be the number. The argument is they should not be applicable, but it is clear that that was the computation used by the husband's attorney and the wife's attorney, and the court finds that that is the amount on which all of the payments are to be made.
This court finds that as of February 27, 1992, there was a total alimony and child support arrearage of $7,375.00, $3,761.25 as alimony and $3,613.75 as child support. He is in contempt of court for failure to pay that item.
There was also an order of $100.00 a month to be paid on attorney's fees, which payment was also not made, and there is due presently $600.00. The court finds the husband in contempt of the court order to pay the attorney's fees.
Also, he was found to be in arrears $2,250.00 on the Harvard order, and he was ordered to pay that $100.00 a month CT Page 3028 beginning in September. October and November and then $200.00 a month thereafter until paid and a final payment of $150.00 for the final month. He is in arrears $900.00. In addition, he was to pay on the arrearage once he stopped paying Harvard. However, he did not get that far in his payments. The court finds the husband in contempt of that order.
The court finds further that the husband has failed to pay one half of the unreimbursed medical expenses of the three children, Chad, Doug and Shane, in the total sum of $545.31, his one half being $272.66. He is found to be in contempt of court for failure to pay that.
The wife has alleged that the husband has failed to provide dental insurance for the children since October of 1991 in violation of the terms of the judgment. The court has reviewed the referenced paragraph as stated by the wife which is Article 6.1 on page 13 of the agreement and is referred to in the judgment of the court. There is no reference to dental coverage in Article 6, and in fact it is entitled "Medical and Hospitalization Insurance." The court does not find him in contempt of court for failure to provide dental insurance for the children.
The court has taken into consideration all of the relevant case law and statutory provisions including Connecticut General Statutes 46b-87 and orders attorney's fees to be paid by the husband in the sum of $2,000.00.
The court finds that the total arrearages due including alimony, child support, counsel fees, medical bills, and payments at Harvard are $11,147.66. The husband was ordered to pay $2,000.00 towards the arrearage on a representation that he had placed such funds in escrow with his attorney. In open court the attorney was in the process of writing out the check. The court concludes that that payment has been paid: therefore, the amount due is $9,147.66. The husband is ordered to begin paying $265.00 per week to his wife. This leaves him with the statutory required minimum of $135.00. That is to be paid every week. That is an effective monthly payment of $1,139.50. The payment that is ordered by the court currently is $925.00 per month. That means that $214.50 is payable each month on the arrearage. This order supersedes all other court orders on the arrearage.
This court has reviewed the records and finds that civil contempt is intended to be coercive, but there must be an opportunity for the person in contempt of court to purge himself of the contempt. From his financial affidavit and the testimony obtained in court, there appears to be no such CT Page 3029 opportunity at this time if the court ordered a lump sum payment.
The husband is further ordered to submit to his ex wife annually copies of his income tax returns when they are filed and quarterly statements made under oath showing the gross amount of his assets, his income, his liabilities and expenses in the form substantially set forth in JD-FM-6 Rev. 9/91, the court's financial affidavit.
In addition, he is to make application immediately for a loan from Harvard University and to report back to this court with the results of that application within 30 days of this decision. Note the order of Judge Hauser did not provide that the child was to be responsible for any part of it so he must make this application without him. He is certainly welcome to use, however, his present wife's credit line if he so chooses. This court will then hear what the results are of these efforts.
EDWARD R. KARAZIN, JR., JUDGE